664 A.2d 559

MOTORISTS INSURANCE COMPANIES, Appellant

v.

Michelle S. EMIG, a/k/a Michelle S. Lance.

Superior Court of Pennsylvania.

Argued April 24, 1995.

Filed July 27, 1995.

526

Jeffrey Millin, Meadville, for appellant.

Mary K. Karn, Erie, for appellee.

Before KELLY, FORD ELLIOTT and BROSKY, JJ.

BROSKY, Judge.

This appeal is from the Order entered in an action in declaratory judgment declaring the underinsurance coverage on a policy of automobile insurance issued to appellee by appellant to be fifty thousand dollars ($50,000.00) per person and one hundred thousand dollars ($100,000.00) per occurrence.

Appellant, Motorists Insurance Companies, raises two issues on appeal. The first suggests that the trial court failed to apply the proper burden of proof that the statutory "Important Notice" of Section 1791 of the Motor Vehicle Responsibili-

ty Law ("the MVFRL"), 75 Pa.C.S.A. §§ 1701 *et seq.*, was satisfied concerning notice of available insurance benefits. The second issue queries whether appellee's signature on the policy change request form, which form indicated lower uninsurance/underinsurance ("UM/UIM") coverages, together with receipt of the statutory "Important Notice", constituted a waiver of UM/UIM coverages equal to the bodily liability limits of the policy. We affirm.

The pertinent facts underlying this cause of action are as follows:

Appellee was involved in an automobile accident on February 6, 1991. This accident is the genesis of the matter now before us. At the time of the underlying accident and prior thereto, appellee was insured by appellant under a policy of automobile insurance. In her initial application of February 28, 1990, appellant requested and ultimately received bodily injury liability coverage of fifty thousand dollars ($50,000.00)/ one hundred thousand dollars ($100,000.00) [50/100]. As part of her initial application, she also requested and received reduced UM/UIM coverages in the amount of fifteen thousand dollars ($15,000.00)/thirty thousand dollars ($30,000.00) [15/30] as permitted by Section 1734 of the MVFRL. Pennsylvania law requires insurers who issue motor vehicle liability policies in this Commonwealth to offer its customers UM/UIM coverages in amounts equal to the bodily injury liability limits of the customers' policies. *See* 75 Pa.C.S.A. § 1791(6). Because of this mandate, appellee was required to execute a "waiver/acknowledgement" as part of her initial application of her right to receive UM/UIM coverages equal to the amount of the body liability limits of her policy. This she did. Appellee also signed her name at the end of the application, itself.

Prior to the renewal of the policy, which expired on August 28, 1990, appellee was involved in an automobile accident not the one here at issue. As a result, she was advised by her then counsel to raise her UM/UIM limits because they were too low. She complied with this suggestion by requesting UM/UIM limits of 50/100. Upon renewal of the policy, she received a declarations page evidencing renewal of the policy

and showing the increased UM/UIM coverages equal to her bodily injury liability limits, *i.e.*, 50/100.

On December 15, 1990, appellee purchased a Plymouth Acclaim, coverage for which she wished to add to her then current policy of insurance with appellant. On January 31, 1991, appellee met with Leon Sommers, appellant's agent. The purpose of this meeting was to add coverage for her newly purchased Plymouth Acclaim and to determine how she could reduce her policy premiums since coverage would now include the Plymouth. As a result of her discussion with Mr. Sommers, appellee executed a casualty policy change request form. As part of this change request, it is undisputed that appellee included the name of her new husband as an additional driver of the insured vehicles and the new Plymouth as a covered motor vehicle. It is also not disputed that appellee requested a first party medical expense benefit of five thousand dollars ($5,000.00) and executed a separate form for this added benefit. Additionally, to reduce her premium, the parties agree that appellee rejected stacking of UM/UIM coverages. To implement this rejection, she signed a separate waiver form.

On February 6, 1991, appellee was involved in the automobile accident which gave rise to the matter now before us. She settled her claim in the amount of the limits of the tortfeasor's policy. Appellee then applied for UIM benefits under her own policy with appellant in the amount of fifty thousand dollars ($50,000.00). She was informed by appellant that the limit of her UIM coverage was fifteen thousand dollars ($15,000.00), instead. As a result of the dispute over the amount of UIM coverage which appellee's policy affords, appellant instituted this declaratory judgment action. After a hearing, the trial court found that the policy in force at the time of the February 6, 1991 accident provided UIM coverage of 50/100 instead of 15/30, as claimed by appellant. This appeal followed.

## I.

As stated before, Section 1791 of the MVFRL requires an insurer doing business in Pennsylvania to furnish the policy

applicant with a copy of the "Important Notice". This notice must advise the applicant of the types and amounts of coverages which are required to be offered to him/her. This notice must also inform the applicant that he/she may purchase or reject these coverages. The applicant must also be made aware that he/she may purchase coverages in higher or lower amounts than those set forth in the "Important Notice". Section 1791 provides in pertinent part as follows:

**Notice of available benefits and limits**

It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, and no other notice or rejection shall be required:

## IMPORTANT NOTICE

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you....

*   *   *   *   *   *

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000, because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident....

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

75 Pa.C.S.A. § 1791.

Appellant is correct that the "Important Notice" required by Section 1791 operates as a conclusive presumption when the insurer strictly follows the mandate of that Section. *In-*

*surance Company of the State of Pennsylvania v. Miller,* 426 Pa.Super. 519, 627 A.2d 797 (1993); *Botsko v. Donegal Mutual Ins. Co.,* 423 Pa.Super. 41, 620 A.2d 30 (1993), *appeal denied,* 536 Pa. 624, 637 A.2d 284 (1994). Appellant maintains that it has strictly followed the mandate of Section 1791, and appellee does not deny that she received the "Important Notice" when she signed the policy change request form. As a result, appellant contends, appellee's signature on the policy change request form and her receipt of the statutory "Important Notice" operate as a conclusive presumption that she actually knew and understood that her UIM coverage limit was 15/30 instead of 50/100.

We believe that the conclusive presumption of Section 1791 with respect to any reduction of coverages of appellee's UM/UIM limits cannot be applied here since the record does not evidence a prerequisite compliance with Section 1734. Our reasoning follows in the discussion of issue number two, below.

## II.

Section 1734, to which we have previously alluded, provides:

**Request for lower limits of coverage**

A named insured may request *in writing* the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

(Emphasis supplied). The coverages referred to with respect to Section 1731 are UM/UIM coverages. Section 1731 reads in pertinent part:

**Availability, scope and amount of coverage**

**(a) Mandatory offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as

provided in section 1734 (relating to request for lower limits of coverage). . . .

75 Pa.C.S.A. § 1731(a).

Section 1731(b) then defines UM coverage and sets forth the language to be used in the form which an insurer must have an insured sign if the latter wishes to reject this coverage. Subsection (c) defines UIM coverage and similarly provides language to be used in the rejection form for this coverage, as well. Subsection (c.1) details the specific procedure to be followed when an insured wishes to reject either or both coverages and explains the effect of such rejection(s). No similar forms or procedure for *reduction* of UM/UIM coverages, which is the focus of our concern here, are provided. Nevertheless, the legislature, in its wisdom, has provided for such contingency by its enactment of Section 1734.

In its prediction of how our supreme court would interpret Section 1734, the United States Court of Appeals for the Third Circuit in *Nationwide Insurance Co. v. Resseguie*, 980 F.2d 226 (3d Cir.1992), held that Section 1734 mandates that a request to reduce UIM coverage be in writing by the insured to be effective. In that case, Mrs. Resseguie, the sole insured, obtained an automobile insurance policy from Nationwide with bodily liability limits of 50/100 and UM/UIM coverages of 15/30. Prior to the policy renewal date and after the passage of the MVFRL, Nationwide mailed Mrs. Resseguie a copy of the statutory "Important Notice" advising her of the right to purchase UM/UIM coverages in amounts equal to her bodily liability limits under the policy. Nationwide also mailed her an option selection form. Nationwide automatically renewed Mrs. Resseguie's policy with the higher UM/UIM coverages (i.e., equal to her bodily liability limits) because she had not returned the option form and advised her that she could contact her insurance agent if she wished to change this. Mrs. Resseguie, however, paid the premium for the higher UM/UIM coverages and received a policy reflecting this.

A few days thereafter, Mrs. Resseguie's husband, a listed driver under the policy, orally requested Nationwide to reduce

UIM coverage from 50/100 to 15/30 on Mrs. Resseguie's policy. As a result of this request, the secretary to Nationwide's agent wrote out a customer service request form on which was reflected the requested reduction. In response to this form, Nationwide mailed to Mrs. Resseguie a new declarations page reflecting this reduction and advising Mrs. Resseguie that a credit for the reduction had been applied to the premium balance. Mrs. Resseguie continued to pay the premiums reflecting the reduced UIM coverage for four years.

Mr. Resseguie was killed in an automobile accident four years after the UIM reduction which he had orally requested took effect. Because the limit of the tortfeasor's policy was insufficient to cover damages, Mrs. Resseguie applied for a 50/100 UIM coverage limit under her policy. Nationwide then instituted a declaratory judgment action for a determination of the amount of UIM coverage on the policy.

The court of appeals found that Mrs. Resseguie, as the named insured, never personally requested in writing the reduction of UIM coverage and never authorized her husband to do so. Moreover, Nationwide never obtained a written request from Mrs. Resseguie for UIM reduction. The court of appeals, in affirming this holding of the United States district court, declared:

> 'Section 1734 requires the named *insured to request in writing* that the limits of her coverage be lowered. *Short of a written request by Marian Resseguie for the lower coverage,* ... *Nationwide simply was not authorized to alter her policy.*'

At 231.

> [Section] 1734's language is plain[,] and the Pennsylvania General Assembly's intention is clear. By its terms, a named *insured* may lower her statutorily provided UIM coverage limits by *requesting in writing* of her insurer to do so. The insurance company's obligation to issue a policy with UIM coverage in an amount equal to the policy's bodily

injury liability coverage is not relieved unless it has received such a *written request.*

*Id.* In conclusion, the court of appeals stated:

We therefore reject Nationwide's argument that 'the writing necessary to effect Marian Resseguie's request that her UIM benefits be reduced ... is the February 20, 1985 written Customer Service Request, generated as a result of Richard Resseguie's verbal instructions to the Nationwide Insurance office.' We agree with the district court that to accept Nationwide's argument on the meaning of @ 1734 'would defeat the purpose of the MVFRL by creating unintended ambiguities in the law. It is a very simple, clear-cut rule for an insurance company to follow—to lower the limits it must insist on a *written authorization signed by the named insured* '.

*Id.*, at 232, *quoting, in part, Nationwide Insurance Co. v. Resseguie*, 782 F.Supp. 292, 294 (M.D.Pa.1992); (all emphases supplied).

The policy change request form at issue here contains a separate section denominated **"ADD COVERAGE SAME AS ON POLICY"**. Across from this margin heading is the designation "UM/UIM BI". Underneath this designation is a blank box and two blank lines thus, _____/_____, with the first line on top and a "slash" and the second line underneath the first. Beside the top line is a box which is to be filled in with an "x" if the customer desires his/her UM/UIM limits to equal the bodily liability limits of the policy. The blank lines are to be filled in with the amount of UM/UIM coverages which the customer desires if these coverages are to be different from the amount of coverage for bodily injury liability. On the policy change request form in question, the UM/UIM box was "x'ed" and the numbers "15" and "30", respectively, were written in the blank spaces. The "UM/UIM BI" box was circled and the word "Reduce" was written in the box. Mr. Sommers, appellant's agent, testified at the hearing held on the declaratory judgment action that it was he who filled out the policy change request form, "x'ed" the "UM/UIM BI" box, filled in the blanks with the numbers

"15" and "30", circled the "UM/UIM BI" box and wrote "Reduce" therein. N.T. 68.

The policy change request form also contains another, separate section. This section is entitled **"UM/UIM REJECTION OR REDUCTION"** and provides, with regard to the law of this Commonwealth, as follows:

> **UM/UIM REJECTION OR REDUCTION** If an option listed below *is requested, the correct block must be checked and the insured must sign in the space provided.*
>
> *       *       *       *       *       *
>
> **PA** [Blank Box] I request an Uninsured Motorists [sic] coverage limit of $__/$__ to be effective in my policy. [Blank Box] I request an Underinsured Motorists [sic] coverage limit of $__/$__ to be effective in my policy. I understand that the limit(s) requested are lower than the Bodily injury Liability limit afforded by this policy.
>
> *       *       *       *       *       *
>
> Applicant's Signature–UM/UIM Rejection X_____

(Emphasis supplied). This section of appellee's policy change request form was left blank, *i.e.*, neither of the blank boxes applicable to UM/UIM coverage in this Commonwealth was "checked", the blanks following the two "$" were not filled in, and, contrary to the instructions of that section, appellant did not affix her signature on the line provided. When asked why this section was not completed for reduction of the UM/UIM coverages, Mr. Sommers testified that it was not necessary, since he had already indicated in a prior section that the UM/UIM coverages were to be reduced and the amounts to which they were to be reduced. He testified, moreover, that he had overlooked the above section and the necessity for appellee's signature there. N.T. 73.

It is apparent, however, that the two sections of the policy change request form serve different purposes. The instructions under the section **"ADD COVERAGE SAME AS ON POLICY"** state: "X Box (under each coverage) for same limit as policy or show new limit. . . ." Thus, the blank box beside

the blank lines in the "UM/UIM BI" portion of that section is to be "x'ed" only if the customer desires UM/UIM coverages to equal the bodily injury liability coverage of the policy. Otherwise, amounts of UM/UIM coverages are to be filled in on the blank lines if these coverages are to be different from the bodily injury liability coverage of the policy. The purpose of this section is *not to request* reduction of UM/UIM coverages. It does not contain any language therein indicating that the applicant is *requesting* a reduction. It also does not contain a signature line, nor is the section designed to provide for one.

The section **"UM/UIM REJECTION OR REDUCTION"**, however, does contain language indicating a request for reduction of UM/UIM coverages, and the instructions accompanying that section provide that the blank boxes pertaining to each of UM/UIM coverages are to be checked and the amounts for each coverage are to be filled in on the blank spaces. In addition, the instructions require that the applicant sign on the blank signature line provided therein. As noted before, this section was left blank.

▮ We must determine whether appellee's signature at the end of the policy change request form on which appellant's agent indicated reduced amounts of UM/UIM coverages or the act of appellant's agent in filling in the UM/UIM coverages and writing "Reduce" thereon compensated for or is sufficient to fulfill the mandate of a request in writing pursuant to Section 1734. If it is not, we must then decide what effect, if any, non-compliance with Section 1734 has upon application of the conclusive presumption of Section 1791. We conclude that the requirement of a request in writing pursuant to Section 1734 has not been satisfied and that, therefore, the trial court properly refused to apply the conclusive presumption of Section 1791.

It is important to note at this juncture that whether appellee actually requested a reduction in her UM/UIM limits from 50/100 to 15/30 is irrelevant under the circumstances. The trial court, in its Opinion written in support of its Order

declaring appellee's UM/UIM coverages to be 50/100, found as follows in this regard:

> While we find it unlikely that [appellee] specifically requested that her UM/UIM benefits remain the same, we are not prepared to find that she specifically requested a reduction in these limits either. While Agent Sommers testified that he discussed the UM/UIM limits with [appellee], he also could not remember any specific questions asked by [appellee]. We will not discredit [appellee's] uncontradicted testimony that she believed her UM/UIM limits were unchanged when she read the Important Notice and when she left the January 31 meeting.

At pp. 6–7.

If appellee did not request this reduction in writing, then Agent Sommers was without authorization to write into and circle the section of the policy change request form "**ADD COVERAGE SAME AS ON POLICY**", discussed *supra*, reduced amounts of UM/UIM coverages and write the word "Reduce" thereon. In this event, his position is no better than was that of the secretary in *Resseguie* who filled out the customer service request form. Agent Sommers' act did not constitute a request in writing by the insured. *Resseguie, supra.* Appellee did not even initial this purported change by Mr. Sommers. Similarly, even if appellee had requested reduction of her UM/UIM limits, her waiver is ineffective. The section of the policy change request form "**UM/UIM REJECTION OR REDUCTION**" was left blank despite the instructions therein that "the correct block must be checked and the insured must sign in the space provided."

Additionally, the receipt of the "Important Notice" and her signature at the end of the policy change request form do not fulfill the mandate of a request in writing because Section 1791 does not provide a mechanism for requesting UM/UIM coverages. At most, the insured's signature at the end of an insurance policy application "merely evidences the insureds [sic] acceptance of the policy, [sic] but cannot amount to a

statutorily enforceable waiver of uninsured/underinsured motorist coverage limits equal to bodily injury limits." *Nationwide Insurance Co. v. Profit,* 10 D. & C. 4th 287, 296 (1991). Hence, no request in writing by appellee appears here.[1]

We have already observed that the two sections on the policy change request form serve different purposes in any event, the former being the appropriate section to complete for requesting reduction of UM/UIM coverages. As no request in writing by appellee to reduce the limits of her UM/UIM coverages is evident, we cannot say that compliance with Section 1734 has occurred here. This being so, we now proceed to the final leg of our analysis to determine what effect, if any, non-compliance with Section 1734 has upon the application of the conclusive presumption of Section 1791.

### III.

In determining whether non-compliance with Section 1734 precludes the application of the conclusive presumption of Section 1791, we are guided by several provisions of the Statutory Construction Act, 1 Pa.C.S.A. §§ 1501 *et seq.*[2] The first provision which we consider is Section 1921. This section provides in pertinent part:

**Legislative intent controls**

1. The distinction in *Resseguie* that the request was made by a person who was not a named insured is one without a difference. Assuming, without deciding, that appellee, a named insured, did request the change in her UM/UIM limits at her meeting with Mr. Sommers on January 31, 1991, nevertheless, Section 1734 mandates that the request be made *in writing by the insured.* Under the circumstances of this case, Agent Sommers had no more authority to request reduction of appellee's UM/UIM limits than did Mrs. Resseguie's husband or the agent's secretary there who filled out the customer service request form. We note, moreover, that the *Resseguie* court considered insignificant that Mrs. Resseguie had paid premiums for the lower UM/UIM coverages for a period of four years.

2. We do not conduct this analysis with an eye toward resolving any ambiguity or irreconcilability between the statutes here in question. On the contrary, and as our analysis will conclude, both statutes are clear and free from ambiguity and are reconcilable with each other.

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly....

1 Pa.C.S.A. § 1921(a).

In construing a statute, we are required to effectuate and ascertain the intent of the legislature. *Lambert v. McClure,* 407 Pa.Super. 257, 595 A.2d 629 (1991); 1 Pa.C.S.A. § 1921(a). The intent of the General Assembly in enacting the MVFRL was to reduce the rising cost of purchasing motor vehicle insurance. *Danko v. Erie Insurance Exchange,* 428 Pa.Super. 223, 630 A.2d 1219 (1993), *aff'd,* 538 Pa. 572, 649 A.2d 935 (1994); *Lambert, supra.* The MVFRL, of which Sections 1734 and 1791 are a part, is to be construed liberally in order to promote justice and to give effect to its objects. *Id.* 1 Pa.C.S.A. § 1928(c) ("All other provisions of a statute shall be liberally construed to effect their objects and to promote justice.")[3]. One of the objects of the MVFRL to be effected by this liberal construction is affording the injured claimant the greatest possible coverage. *Danko, supra; Sturkie v. Erie Insurance Group,* 407 Pa.Super. 117, 595 A.2d 152 (1991); *Lambert, supra,* at 257, 595 A.2d 629. In close or doubtful cases, we must interpret the intent of the legislature and the language of insurance policies to favor coverage for the insured. *Danko, supra,* at 223, 630 A.2d 1219; *Lambert, supra,* at 257, 595 A.2d 629.

In light of the foregoing principles, we make the following observations. First, the purpose of Sections 1734 and 1791 are the same, *viz:* to reduce the cost of purchasing an automobile insurance policy by offering an insured the opportunity to purchase UM/UIM coverages in amounts lower than his/her bodily injury liability limits. Secondly, both sections also offer the insured the option to purchase UM/UIM coverages in amounts equal to the limits of his/her bodily injury liability coverages. This is in keeping with the mandate that we interpret the MVFRL liberally in order to allow an injured insured the greatest possible coverage allowed by law. Thirdly, by imposing a floor upon the amount of UM/UIM coverag-

---

**3.** The MVFRL falls into that class of legislation which is excluded from the strict construction requirement of Section 1928(b), *q.v.*

es insurers are required to offer in this Commonwealth, both statutes at issue here guarantee minimum UM/UIM coverages to insureds whose damages are greater than the amount of the tortfeasor's bodily injury liability limits.

■ Section 1932 of the Statutory Construction Act, 1 Pa.C.S.A. § 1932, is also relevant to our analysis and reads:

**Statutes in pari materia**

(a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.

(b) Statutes in pari materia shall be construed together, if possible, as one statute.

Based upon the foregoing analysis, we harbor no doubt that Sections 1734 and 1791 are in pari materia. First, they both relate to insureds who are faced with the decision whether to purchase UM/UIM coverages and, if so, in what amounts. Section 1734 requires an insured to request in writing his/her desire to purchase UM/UIM coverages and also requires the insured to request in writing the amounts he/she desires these coverage limits to be with respect to the amount of the insured's bodily injury liability limits. Section 1791 places an insured on notice that he/she may purchase, *inter alia,* UM/UIM coverages equal to or lower than his/her bodily injury liability limits.

Appellant appears to argue, however, that the "Important Notice" provision of Section 1791 operates as a blanket or catch-all waiver and, coupled with appellee's signature at the end of the policy request change form,[4] supersedes all other statutory requirements and all other waiver provisions included in an insurance application or change request form. This is so despite the absence of a request in writing pursuant to Section 1734, as evidenced by (1) the the lack of information in the **"UM REJECTION OR REDUCTION"** section of the policy change request form and the lack of appellee's signa-

---

4. We have already rejected appellant's argument that appellee's signature at the end of the policy change request form constitutes a request in writing for reduced UM/UIM coverages as contemplated by Section 1734. *See* pp. 565–566 *supra.*

ture therein contrary to the instructions of that section and (2) Agent Sommer's act of filling in the "**ADD COVERAGE SAME AS ON POLICY**" section with regard to reducing appellee's UM/UIM coverages, circling the reduced amounts and writing in his own signature "Reduce", which appellee did not even initial. Were we to adopt appellant's position, we would run afoul of Section 1922 of the Statutory Construction Act, 1 Pa.C.S.A. § 1922, and, in particular, Section 1922(1), (2) and (5) which provide:

**Presumptions in ascertaining legislative intent**

In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

(2) That the General Assembly intends the entire statute to be effective and certain.

*   *   *   *   *   *

(5) That the General Assembly intends to favor the public interest as against any private interest.

1 Pa.C.S.A. § 1922(1), (2), (5).

■ Aware that our primary responsibility in the interpretation of the MVFRL is to ascertain the intent of the legislature, *Lambert, supra,* at 257, 595 A.2d 629, and Section 1921(a), *supra,* we must examine the relationship between Section 1734 and Section 1791 in light of the presumptions expressed above. Were we to conclude that Section 1791 subsumes or supersedes Section 1734, we would be rendering an interpretation that is absurd and unreasonable in contravention of Section 1922(1). It logically follows that our conclusion in this regard would contravene Section 1922(2) because it would be tantamount to holding that Section 1734 exists as mere surplusage. No legislative presumption exists in favor of surplusage. Rather, each statute enacted is to be definite and certain. *See Habecker v. Nationwide Insurance Co.,* 299 Pa.Super. 463, 445 A.2d 1222 (1982).

Our third reason for not adopting the position urged by appellant is that were we to agree with it, we would be favoring a private interest over a public one contrary to Section 1922(5). Appellant argues, and at the hearing Agent Sommers testified, that he and appellant have nothing to gain by a reduction in appellee's UM/UIM coverages. Such a reduction, instead, would result in a loss of income for appellant and its agent. While this may be true with respect to the payment of lower premiums by appellee, where, as here, an accident has occurred and the damages suffered by appellee exceed the bodily injury liability limits of the tortfeasor's automobile policy, lower UM/UIM coverages result in a payout substantially less than that which appellee would receive if her UM/UIM coverages were at least equal to her bodily injury liability limits.

As we noted elsewhere in this Opinion, we are required to construe the provisions of the MVFRL liberally in order to afford appellee the greatest possible coverage. *Danko, supra,* at 223, 630 A.2d 1219; *Sturkie, supra,* at 117, 595 A.2d 152; *Lambert, supra,* at 257, 595 A.2d 629. Appellee, like many other vehicle owner/operator members of the general public, is a consumer of automobile insurance. In keeping with this legislative mandate, we cannot, under the circumstances of this case, ignore the interest of appellee and others like her who purchase automobile insurance policies to protect themselves, their insureds and others whom they may injure in motor vehicle accidents, in favor of the private interests of the insurance industry in this Commonwealth.

Having conducted the foregoing analysis, we are still left to answer the question how Sections 1734 and 1791 interplay so that, in keeping with presumptions of legislative intent, we may give effect to both.

Sections 1734 and 1791 are both provisions of the MVFRL. Section 1734 is part of Subchapter "C" of the MVFRL, and Section 1791 is found in Subchapter "I" thereof. This distinction is important because we are required to heed closely to the subchapters into which the various provisions of the MVFRL are organized. *Westbrook v. Robbins,* 416 Pa.Su-

per. 543, 611 A.2d 749 (1992). We will not apply a provision in one subchapter to interpret a provision in another subchapter, *id.*, especially when to do so cuts against the grain of legislative intent.

■ Subchapter "C" is entitled "UNINSURED AND UNDERINSURED MOTORIST COVERAGE" and is concerned exclusively with UM/UIM coverages, *viz:* availability, scope and amount of coverage (Section 1731), priority of recovery (Section 1733), request for lower limits of coverage (Section 1734), coverages in excess of required amounts (Section 1736) and stacking of UM/UIM benefits and waiver option (Section 1738). Subchapter "C", therefore, contains a comprehensive statutory scheme regulating the availability and the offering by insurers of UM/UIM coverages, the amounts which may and must be offered and the acceptance or waiver of UM/UIM coverages by insureds. Section 1734, in particular, provides the manner by which an insured may request UM/UIM coverages and the amounts which an insured may request relative to the limits of liability of his/her bodily injury liability coverage. Section 1734 mandates that the request for UM/UIM coverages and the amounts thereof must be requested by the insured in writing.

Section 1791, on the other hand, is located in Subchapter "I" of the MVFRL. This Subchapter is entitled "MISCELLANEOUS PROVISIONS" and contains a potpourri of provisions, *viz:* premium charges for extraordinary medical benefits and mandated deductions in premiums for restraint systems, availability of tort options, antitheft devices and driver improvement courses, rates for penalties and point assignments, cancellation rights, refusals to renew, conduct of studies and field surveys by the Department of Insurance, reporting of insurance fraud, mental and physical examinations and charges therefor, attorneys fees, the CAT fund, compulsory judicial arbitration, availability of bodily injury liability and UM/UIM coverages in amounts higher than the statutory minimum, mandatory deductible amounts for collision and comprehensive coverages and notice of available benefits and

limits (Section 1791). Subchapter "I" does not appear to relate to any exclusive aspect of insurance coverage.

Section 1791 is titled *"Notice* of available benefits and limits". (Emphasis supplied). As its title indicates, it is a notice which insurers who do business in this Commonwealth must provide to their insureds advising the latter of the variety of benefits which the insurers are required to offer to their insureds. *See* 1 Pa.C.S.A. § 1924 ("The headings prefixed to ... sections ... shall not be considered to control *but may be used to aid in the construction thereof.*" [Emphasis supplied] ). Section 1791(6), in particular, advises insureds of the amounts of UM/UIM coverages which insurers are required to offer their customers. It also informs insureds that insurers may offer higher or lower benefits than those enumerated in the "Important Notice". It does not require an insured to purchase these coverages. It does not regulate the manner by which application for these coverages is to be made. It operates simply as a notice that (1) certain benefits are available for purchase by an insured and (2) an insured is presumed to know and understand these available coverages, as well as the one(s) which he or she has actually selected. *See* 1 Pa.C.S.A. § 1924, *supra.*

However, in order for the conclusive presumption of Section 1791 to be effective, an insured must have actually selected coverage(s), and the selection process must first be in conformity with the law, *i.e.,* in this case, with Section 1734.[5]

---

**5.** It appears that appellant has designed an "Important Notice" to accompany an application for a policy change request. This "Important Notice" is identical to that set forth in Section 1791, except for the following language:

#### SUPPLEMENTAL APPLICATION/POLICY CHANGE REQUEST FOR FIRST PARTY BENEFITS/EXTRAORDINARY MEDICAL BENEFITS

Motorists Mutual Insurance Company has provided the 'Supplemental Application/Policy Change Request For First Party Benefits/Extraordinary Medical Benefits' form showing all of the First Party Benefit options that we make available for purchase.

\*   \*   \*   \*   \*   \*

Your signature on the 'Supplemental Application/Policy Change Request For First Party Benefits/Extraordinary Medical Benefits' form

At the risk of being redundant, but for the sake of clarity, we repeat: Appellee never selected lower UM/UIM coverages because she did not request the same in writing as required by Section 1734. If she did request reduced UM/UIM coverages, her request is ineffective for the same reason.[6] The absence of a written request by appellee pursuant to Section 1734, of course, would preclude her knowledge and understanding of lower UM/UIM coverages for the purpose of Section 1791. She could not be presumed to have knowledge and understanding of that which she never selected in accordance with law. ·

The "Important Notice" is merely a notice to appellee that she must be offered certain benefits in certain amounts which she may accept, reject or reduce. Thus, Section 1791 does not provide the means for selection, rejection or reduction of these offered benefits. This, instead, is provided for by the legislature in Subchapter "C". The "Important Notice" merely informs appellee that she is presumed to know and understand those benefits offered *and* those benefits which she has selected in conformity with law, *i.e.*, in this case, Section 1734. If appellee has not selected reduced UM/UIM coverages in conformity with Section 1734, she cannot be presumed to have knowledge and understanding of them. If Section 1791 were to serve the same legislative purpose as does Section 1734, the latter would amount to mere surplusage, a result not intended

and the application for insurance coverage will evidence your actual knowledge and understanding of the available benefits and limits as well as **the benefits and limits you have requested**.
(Bold emphasis in text; underlined emphasis supplied).

Neither Section 1791 nor any other section of the MVFRL provide for the furnishing of a copy of the "Important Notice" to an insured when he/she chooses to apply for a subsequent change in his/her current policy. In fact, Section 1791 states that a copy of the "Important Notice" be "given to the applicant at the time of application for *original coverage, and no other notice* or rejection *shall be required.*" (Emphasis supplied). We note that the statute uses the word "required" rather than "forbidden". Thus, we believe that appellant is not barred from furnishing its insureds with another copy of the "Important Notice" tailored to fit the event of a policy change request, While we laud its efforts for doing so, we regret to inform appellant that going this extra mile does not save the day for it.

**6.** *See* note 4, *supra.*

by the legislature. Both provisions must remain definite and certain. *See Habecker, supra,* at 463, 445 A.2d 1222. Simply stated, the two statutes are found in two different subchapters because each statute serves a different purpose and relates to a different aspect of motor vehicle financial responsibility.

Having said all this, how are we to give effect to both Section 1734 and Section 1791, and how are they reconcilable with each other? The answer is thus: Given the distinct legislative purposes of the two statutes relative to the facts at bar, the conclusive presumption of Section 1791 is not triggered unless and until the statutory mandate of Section 1734 has first been fulfilled. Since the latter event has not occurred here, the conclusive presumption of Section 1791 has no application to these facts.

Order affirmed.