**Azaria v. Sacks**

C.P. of Montgomery County, no. 93-26231.

*John J. Gallagher,* for plaintiff.
*Wayne A. Schaible,* for defendant.

LAWRENCE, *J.,* May 16, 1996—This action stems from an automobile accident that occurred on August 20, 1991 while Abraham Azaria, plaintiff, was operating his motor vehicle. In his complaint, he alleges that Elliot Sacks, defendant, collided with the rear of his vehicle while he was lawfully stopped on the roadway, which resulted in personal injuries to him. At the time of the accident, plaintiff was covered by a policy of motor vehicle insurance issued through the Pennsylvania Assigned Risk Plan[1] by State Farm Insurance Company. In conjunction with his application to the plan, he was presented with a selection of tort options.[2]

---

1. The plan is an unincorporated association of motor vehicle insurers within Pennsylvania created pursuant to the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1741. The plan's purpose is to provide equitable apportionment among Pennsylvania motor vehicle liability insurers of applicants for motor vehicle liability insurance who are entitled to, but are unable to, procure insurance through ordinary methods. All motor vehicle liability insurers are required to participate in the plan.

2. The selection of tort options was part of the amendments to the MVFRL of February 7, 1990, (P.L. 11, no. 6) (Act 6), effective July 1, 1990. These amendments were designed to reduce the cost of providing motor vehicle insurance in Pennsylvania and provided mechanisms to pass the cost savings from insurance companies to insurance consumers. *Motorists Insurance Companies v. Emig,* 444 Pa. Super. 524, 664 A.2d 559 (1995). Act 6 made significant changes to the existing law. The primary change required insurance consumers to elect between two types of coverage (tort options) for automobile accident-related bodily injury. The election placed in the consumer's hands the decision to pay a lower premium for a policy which restricted recovery for noneconomic loss (defined as pain and suffering and other nonmonetary detriment) or a higher premium for a policy with unrestricted right of recovery for noneconomic loss. The Act described

On July 19, 1991, plaintiff selected the limited tort coverage on a standard plan form identified in the insurance industry as PA-1000.[3] Subsequent to the execution of this document, State Farm was assigned his policy.

On May 1, 1995, plaintiff filed the instant motion in limine seeking to invalidate his selection and thus allow him to seek noneconomic damages on the basis that PA-1000 was defective as a matter of law. Plaintiff's motion was ultimately denied by order of January 10, 1996, as amended on February 6, 1996, to include a statement certifying the order for purpose of an interlocutory appeal pursuant to 42 Pa.C.S. §702(b). By order of March 14, 1996, the Superior Court granted permission to appeal.

The argument advanced by plaintiff is that PA-1000 fails to comply with sections 1705(a)(1) and (4) of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq., MVFRL, which he claims mandate a specific written cost comparison to new applicants of the two tort options available. Section 1705(a)(1) provides, in pertinent part:

"Each insurer, not less than 45 days prior to the first renewal of a private passenger motor vehicle liability insurance policy on and after July 1, 1990, shall notify in writing each named insured of the availability of two alternatives of full tort insurance and limited tort insurance described in subsections (c) and (d)."

the lower premium option as the "limited tort" option. The higher premium option is characterized as the "full tort" option.

3. PA-1000 was utilized by plan insurers and was approved for use in the plan as part of a court-approved stipulation and order signed on July 6, 1990 by the Honorable Joseph T. Doyle of the Commonwealth Court.

Section 1705(a)(4) provides, in pertinent part:

"Each insurer, prior to the first issuance of a private passenger motor vehicle liability insurance policy on and after July 1, 1990, shall provide each applicant with the notice required by paragraph (1)."

This notice describes the limited tort option and the full tort option and also contains a premium quote for basic coverage under both options. There are two places to sign—one for election of limited tort and one for election of full tort. Section 1705(a). Plaintiff argues that since the coverage selection form supplied to him in connection with the policy first issued to him in July 1991 failed to state the difference in premiums between the limited and the full tort coverage, it is void and he is deemed covered by the full tort alternative pursuant to section 1705(a)(1)(3).[4]

Defendant contends that neither section 1705(a)(1) nor section 1705(a)(4) applies to the required tort option notices for new policies issued subsequent to the effective date of the Act. He takes the position that section 1705(a)(1) relates only to existing policyholders for their initial renewals on and after July 1, 1990, while section 1705(a)(4) pertains only to existing policyholders who applied for replacement policies before their first renewal dates (e.g., to add an insured or obtain Act 6 savings at an earlier date). Defendant maintains that section 1791.1 governs the form of notice required in plaintiff's case.[5]

---

4. In the event the consumer failed to make an election, the full tort alternative applied.

5. Defendant argued preliminarily that neither section 1705 nor section 1791.1 applies to the plan, as it is not an "insurer" within the meaning of either of those sections but rather an unincorporated association of motor vehicle insurers created by statute. The court finds this argument untenable and starts from the premise that State Farm is an "insurer" within the meaning of that word. 75 Pa.C.S. §1702.

Section 1791.1(b) requires insurers, at the time of original application for insurance and every renewal thereafter, to disseminate a notice regarding the two tort options, as well as the premium charges for the minimum coverages required by law. Although this notice provides a description of the tort options similar to that contained in the section 1705(a) notice, it does not include premium cost comparisons under those options. Section 1791.1(b). The issue in the instant case is whether a valid election can be made on an original application for insurance without the premium costs related to that election set forth on the coverage selection form.

After a thorough review of the parties' legal memoranda, pertinent statutory provisions, interpretations of those provisions by the Insurance Department, as well as the recent opinions of other lower courts in addressing this issue, the court is convinced that PA-1000 is not in conformity with the MVFRL for original applications for insurance. Section 1791.1(b) was not intended as the exclusive, operative notice for new insurance applicants with regard to their tort options. This section merely sets forth the annual disclosure statement advising of the existence of the two tort options offered under the law; it must be provided to new applicants and renewal customers alike. That this section is simply advisory for new applicants and does not satisfy all notice requirements for them relating to the tort options is underscored by the fact that it does not provide the mechanism by which a new customer can elect one of the described options. This initial election notice is mandatory pursuant to section 1705(a)(4), which states that "a policy may not be issued until the applicant has been provided an opportunity to elect a tort option,"

and is accomplished exclusively by way of the section 1705(a) notice.

The initial option selection process is critical given that it continues in force until the insurer receives a properly signed form electing the other option. Once the initial election is made, a section 1791.1(b) notice will be sent each year reminding the insured of the two tort options available and advising them of the possibility of making changes in the option selected and that in order to change their election they must send the appropriate form to the insurance company. At that point, the disclosure notice under section 1791.1(b) is sufficient, and the burden is on the consumer to seek the appropriate form to change his selection.

The court is guided by several principles of statutory construction. First, the object of all interpretation of statutes is to ascertain and effectuate the legislative intent, construing the statute if possible to give effect to all of its provisions. Statutory Construction Act, 1 Pa.C.S. §1921(a). As stated previously, the MVFRL reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists. *Blakney v. Gay,* 441 Pa. Super. 547, 657 A.2d 1302 (1995). The intent of the General Assembly in enacting the MVFRL was to reduce the rising cost of purchasing motor vehicle insurance. *Motorists Insurance Companies v. Emig,* 444 Pa. Super. 524, 664 A.2d 559 (1995). The MVFRL is to be construed liberally in order to promote justice and to give effect to its objects. *Id.,* 1 Pa.C.S. §1928(c). One of the objects of the MVFRL to be effected by this liberal construction is affording the injured claimant the greatest possible coverage. *Id.* In close or doubtful

cases, the intent of the legislature must be interpreted to favor coverage for the insured. *Id.*

The Statutory Construction Act indicates that the title, preamble, headings and other divisions of a statute may be considered in the construction of the enactment. 1 Pa.C.S. §1924. With this in mind, the court finds significance in the fact that section 1705 is specifically designated "Election of tort options" and is contained in subchapter "A," entitled "General provisions," which consists of the title of the chapter, various definitions, the application and administration of the chapter and the election of tort options (section 1705). Importantly, section 1705 is the only substantive section in the subchapter. In contrast, section 1791.1 is entitled "Disclosure of premium charges and tort options" and falls under the last subchapter, subchapter "I," entitled "Miscellaneous provisions." It contains "a potpourri of provisions, *viz:* premium charges for extraordinary medical benefits and mandated deductions in premiums for restraint systems, . . . antitheft devices and driver improvement courses, rates for penalties and point assignments, cancellation rights, refusals to renew, conduct of studies and field surveys by the Department of Insurance, reporting of insurance fraud, mental and physical examinations and charges therefor, attorneys fees, the CAT fund, compulsory judicial arbitration, availability of bodily injury liability and UM/UIM coverages in amounts higher than the statutory minimum, mandatory deductible amounts for collision and comprehensive coverages and notice of available benefits and limits. . . ." *Motorists Insurance Companies v. Emig, supra* at 542, 664 A.2d at 568.

The court does not believe that the legislature would relegate a provision intended to be the equivalent tort option notice for new customers to the catch-all "Mis-

cellaneous provisions" subchapter. Rather, the two statutes are found in different subchapters because each statute serves a different purpose and relates to a different phase in the comprehensive scheme of motor vehicle financial responsibility, section 1705(a) under which the initial tort option election is made and section 1791.1(b) under which the annual disclosure at the time of original application and at every subsequent renewal is provided.

Defendant relies primarily on interpretations from the Insurance Department, which is charged not only with the responsibility for promulgating rules and regulations concerning the Assigned Risk Plan (75 Pa.C.S. §1741) but is also vested with authority from the legislature to administer and enforce the MVFRL (75 Pa.C.S. §1704). Generally, regulations promulgated by an agency are accorded a presumption of validity and reasonableness. *Hospital Association of Pennsylvania Inc. v. Foster,* 157 Pa. Commw. 363, 629 A.2d 1055 (1993). A court will not substitute its judgment for that of the agency unless a clear abuse of discretion is shown. *Id.*

In 1990, the department issued a "statement of policy" to provide guidance on the notices mandated by Act 6. 31 Pa. Code Chapter 68. In this statement, the department advised insurers that section 1705(a) notices applied to existing policyholders and for initial renewal of those policies after July 1, 1990. 31 Pa. Code Chapter 68. The department also instructed insurers that the section 1791.1(b) form was required for new business on or after July 1, 1990 and for renewal policies issued after the first renewal cycle following the initial notices required in 75 Pa.C.S. §1705 (relating to tort options). 31 Pa. Code Chapter 68.107. Further, the department viewed section 1791.1(d) as the mechanism by which

the new customer would receive his cost notice. This section provides:

"Additional information.—Upon an oral or written request, an insurer subject to this chapter shall provide to the requestor information on the requestor's cost to purchase from the insurer the minimum requested automobile insurance coverages under either of the two tort options described in subsection (b). These requirements shall include the request for and provision of information by telephone."

In an affidavit attached to defendant's supporting memorandum, Deputy Insurance Commissioner Gregory S. Martino explained that existing policyholders were treated differently from new customers under Act 6 because they were not presumed to understand the meaning of the changes brought by Act 6 when it was first implemented. Consequently, he said the legislature provided for a one-time notice of the premium comparisons in the form set forth in section 1705(a). Thereafter, Martino declared, insureds are presumed to have knowledge of the premium difference and no special notice is again included for any subsequent renewal under section 1791.1(b).

With regard to new policyholders, Martino stated, it was anticipated that the agent would respond directly to the applicant and provide cost comparisons tailored to the applicant's needs and financial situation. (See affidavit of Gregory Martino, exhibit "D" to memorandum of law in opposition to plaintiff's motion in limine, paragraph 14.) Martino also emphasized the "practical impossibility" of arriving at written cost comparisons for new customers in advance since they would not have current policies in effect with that company. (Affidavit, paragraph 12.)

Although the procedure in this case was in accord with the department's policy and, indeed, the form signed by plaintiff was approved for use by the plan, these facts alone cannot countermand a specific mandate of the Act.[6] The agency's interpretation is not consistent with the legislative goal of giving insureds a meaningful opportunity to select between full tort and limited tort coverage. The court agrees with the consumer protection arguments advanced by the Honorable Eugene Edward Maier in the decision cited as *Pestcoe v. Nisenzone,* 30 Phila. 194; 27 D.&C.4th 26 (1995). "Despite the outpouring of consumer notice and protection legislation and governmental policies assuring consumer notice, the Insurance Department would have us deny to the consumer the most important information necessary in making an informed auto insurance benefit selection, that is, the cost of limited tort as opposed to full tort coverage.

"Certainly all would agree that a consumer would be aghast if the insurance agent, in writing a policy, refused to disclose the policy cost. If the individual needs the information regarding the cost of the policy, certainly they should have the same information when making a choice as important as whether or not they select limited or full tort option. Without an informed choice, the stated legislative intent of insurance cost reduction can never be realized." *Id.,* 30 Phila. at 199-200; 27 D.&C.4th at 30-31.

Sections 1705 and 1791.1(b) clearly support the right of an insurance consumer to know the cost comparisons of limited and full tort coverage. The department's at-

---

6. The approval of PA-1000 by the Commonwealth Court is not dispositive of the validity of the form, the court not having been called upon to interpret Act 6's notice requirements.

tempt to shift the burden of informing the consumer as to essential financial data from the company to the new consumer, requiring that he contact the insurer himself, violates the express language of the Act and does not comport with legislative intent. Furnishing the information only on request would inevitably lead to the uninformed selection of the full tort option, *i.e.,* by default, because many consumers would never take the affirmative step of making the cost inquiry. This would do nothing to reduce the cost of motor vehicle insurance and cannot be what the legislature envisioned. Inasmuch as the specific language of section 1791.1(d) is not required to appear on the consumer notice,[7] however, it is difficult to understand the explanation that section 1791.1(d) is the mechanism by which the legislature intended potential insureds to learn the comparative costs of the tort options. Section 1791.1(d) simply describes an insurer's obligation to supply cost comparisons to a "requestor," *i.e.,* any individual.

Furthermore, to suggest, as does defendant, that the information can be conveyed over the telephone but not in advance in writing is illogical. Certainly, once the application for insurance is received, the company would no longer have the same difficulty providing the cost comparisons mandated by section 1705(a). At that point, the company has had an opportunity to fully analyze an individual's driving history, the number of claims made against him in the last several years, the number of traffic violations for which he has been convicted, the number of household members he wishes covered under the policy, his age and address, the age of other household members who are to be covered

---

7. The form plaintiff signed states "you may contact your insurance agent, broker or company to discuss the cost of other coverages."

308

by the policy, the type of vehicle(s) the applicant wishes to be insured, along with any other relevant information necessary to evaluating the risk of insuring this applicant.

Moreover, a distinction between new and existing customers on the basis of the former's presumptive knowledge of Act 6 is disingenuous. At the time Act 6 went into effect, all existing policyholders were essentially first-time customers and, therefore, the section 1705(a) notice requirement should apply equally to new as to existing customers. Since the court concludes that the department's interpretations were not a valid exercise of its authority, PA-1000 runs counter to the requirements of the MVFRL and is invalid with respect to new policies.

The court respectfully submits that its order denying the relief requested was in error and that the appeal of plaintiff should be granted.