**George v. AIG Insurance Co.**

*Joseph M. Kunnel,* for plaintiffs.
*Peter A. Dunn,* for defendant.

COHEN, *J.,* May 9, 2003—On April 21, 2003, the parties appeared before the court and each agreed to the admissibility of certain respective findings of fact proposed by each party. Accordingly, the court adopts the following findings of fact.

The facts bear on the issue in this case which is, whether the plaintiffs, though covered by an insurance policy that specifically provided for non-stacked Underinsured Motorist coverage in the amount of $50,000, and having received that benefit, are now entitled to receive stacked Underinsured Motorist benefits due to the absence of a statutorily required signed waiver of stacking privileges. "Stacking," of course, describes the benefits that insureds enjoy who may become involved in an automobile accident in one car and call upon for additional coverage the insurance benefits that apply to other cars they may own.

## FINDINGS OF FACT:

(1) On October 27, 1998, plaintiff, Rosamma George, was injured in a motor vehicle accident.

(2) The plaintiff, Rosamma George, was operating a motor vehicle on October 27, 1998 when it collided with another motor vehicle operated by Joanne Baioni.

(3) The Baioni vehicle was insured by State Farm Insurance Company through a policy affording liability limits of $50,000.

(4) The State Farm policy was paid in full, $50,000 to Rosamma George.

(5) At the time of the accident the vehicle operated by Ms. George was insured under a policy issued by AIU Insurance Company, the defendant herein (incorrectly designated "AIG" in the complaint).

(6) The AIU policy provided for Underinsured Motorist coverage in the amount of $50,000.

(7) At the time of the accident Rosamma George and her husband, George Tharakunnel, owned three motor vehicles, all of which were scheduled as insured vehicles under the AIU policy.

(8) The AIU policy provided Underinsured Motorist coverage pursuant to endorsement number PA-006 (5/98) entitled Underinsured Motorists Coverage—Pennsylvania (non-stacked).

(9) The declarations to the policy which form a part thereof provides for Underinsured Motorist benefits coverage in the amount of $50,000 "without stacking."

(10) Included as part of the policy is a rejection of the stacked underinsured motorist protection limits executed on January 2, 1999 by the first-named insured, viz. George Tharakunnel.

(11) Rosamma George asserted a claim for underinsured motorist benefits against AIU to which AIU responded by paying its underinsured motorist policy limit of $50,000 to Rosamma George.

(12) Despite having been issued an insurance policy providing non-stacked underinsured motorist benefits on January 2, 1999 and at that time signing a waiver of stacking benefits, no identical waiver exists which would ap-

ply to the period of coverage at the time of the accident—October 1998.

(13) The plaintiffs demanded stacked underinsured motorist ("UIM") coverage for the accident of October 27, 1998.

(14) The defendant denied stacked UIM coverage.

(15) The defendant's representative testified under oath that the defendant insurance company has no record of the plaintiffs making any request for a UIM stacking waiver form prior to the time of the accident on October 27, 1998.

## DISCUSSION—CONCLUSIONS OF LAW:

The Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq., sets forth the insurance required to operate a motor vehicle. Every motor vehicle insurance policy must offer optional uninsured motorist coverage. See 75 Pa.C.S. §1731. The uninsured motorist provision of the law permits the insured to reject this coverage only by signing a rejection form. See 75 Pa.C.S. §1731(b). See also, *Donnelly v. Bauer,* 553 Pa. 596, 720 A.2d 447 (1998) and *Salazar v. Allstate Insurance Company,* 549 Pa. 658, 702 A.2d 1038 (1997). Where more than one vehicle is insured against uninsured drivers the policy limits may be "stacked." Stacking is defined in 75 Pa.C.S. §1738 as follows:

"Section 1738. Stacking of uninsured and underinsured benefits and option to waive

"*(a) Limit for each vehicle.*—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the **134*

stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

*"(b) Waiver.*—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the insured person is an insured.

*"(c) More than one vehicle.*—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

*"(d) Forms.*—

"(1) The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form:

"UNINSURED COVERAGE, LIMITS

"By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be re-

duced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

"Signature of first named insured

"Date

"(2) The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:

"*391 UNDERINSURED COVERAGE LIMITS

"By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

"Signature of first named insured

"Date

"*(e) Signature and date.*—The forms described in subsection (d) must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void.

"The terms 'named insured' and 'first named insured' are not defined in the MVFRL. The MVFRL does define the term "insured" as any of the following:

"*392 (1) An individual identified by name as an insured in a policy of motor vehicle insurance.

"(2) If residing in the household of the named insured,

"(i) a spouse or other relative of the named insured;

"**_135_ (ii) a minor in the custody of either the named insured or relative of the named insured." 75 Pa.C.S. §1702.

In the _Salazar_ case the Supreme Court held that the General Assembly determined the policyholders would be given full information regarding availability of stacked coverage before deciding whether or not to reject it. See 702 A.2d at 1044. The law itself in sections 1731, 1791 and 1791.1 outlines the information that an insurer must provide "in order that the insured may make a knowing and intelligent decision on whether to waive [uninsured motorist] benefits coverage."

The question in the case before us is whether this court can determine that the plaintiffs made a knowing and intelligent waiver based upon the facts in the record. The plaintiff has capably demonstrated, and the parties agree, that at the time of the accident there was no signed waiver and the evidence of the waiver of stacking benefits only appears at a later point in time, namely January 2, 1999 when the policy was renewed. This court hesitates to infer the intent of the parties to this insurance contract based upon signatures that were recorded later than the date of the accident. At least one justice of our Supreme Court holds that the validity of a waiver of uninsured motorist coverage is determined "at the inception of the policy." See _Rupert v. Liberty Mutual Insurance Company,_ 566 Pa. 387, 781 A.2d 132, 135 (2001). In this case the court actually is not called upon to determine the validity of a waiver. The court is called upon to determine whether or not a waiver was in existence. Given that the law re-

quires a separate signed waiver, notwithstanding the language of the policy, the court cannot invent one to suit the specific details of this case. This court is further constrained by the requirement that it construe the Motor Vehicle Financial Responsibility Law (MVFRL) liberally "in order to promote justice and to give effect to its objects." *Motorists Insurance Companies v. Emig,* 444 Pa. Super. 524, 538, 664 A.2d 559, 566 (1995). One of the objects of the MVFRL is to afford the greatest possible coverage to the insured. See *Lucas v. Progressive Casualty Insurance Company,* 451 Pa. Super. 492, 499, 680 A.2d 873, 877 (1996). In close or doubtful cases the court "must interpret the intent of the legislature and the language of insurance policies to favor coverage for the insured." *Motorists,* 444 Pa. Super. at 538, 664 A.2d at 566. Accordingly, the court can only conclude that at the time they made their claim for UIM coverage the status of any waiver of stacking privileges was confused at best. Given this state of affairs, the law requires this court to hold that the plaintiffs are entitled to UIM benefits on the basis of stacking. An appropriate order will issue.

## AMENDED ORDER and MEMORANDUM

And now, May 9, 2003, after trial of the within matter, the court finds in favor of the plaintiffs and against the defendant, and further finds that the plaintiffs are entitled to stacked Underinsured Motorist benefits arising from the automobile accident of October 27, 1998.