# Pavelko v. Unitrin Direct Auto Insurance

C.P. of Lawrence County, No. 11190 of 2012

340

*Daniel I. Herman*, for plaintiff.
*Joseph A. Hudock, Jr.*, for defendant.

COX, *J.*, June 12, 2014—Before the court for disposition are the preliminary objections filed on behalf of the defendant Unitrin Direct Auto Insurance a/k/a Unitrin Direct Property and Casualty Company, which argue the plaintiff's amended complaint is legally insufficient as an insurance provider does not have a duty to adjust the amount of medical expenses due in order to postpone the exhaustion of first party benefits nor is the insurance provider required to pay medical bills according to the fee schedule amount as provided in 75 Pa.C.S.A. § 1797.

The plaintiff Valerie Pavelko maintained an automobile insurance policy with the defendant when she was involved in a motor vehicle collision on October 16, 2008, in which she sustained injuries. She received treatment at Jameson Memorial Hospital on October 17, 2008, for her injuries in the amount of $2,956.25. The plaintiff also received a bill from Jameson Memorial Hospital in the amount of $515.00 on October 22, 2008, and another bill in the amount of $170.00 on November 1, 2008. The plaintiff received bills from Penn Imaging Associates, P.C., on October 17, 2008, in the amounts of $105.00, $117.00 and $160.00. On November 1, 2008, the plaintiff received another bill from Penn imaging Associates in the amount of $30.00. University of Pittsburgh Medical Center Emergency Medicine billed the plaintiff in the amount of $330.00. She also received bills from Dr. Paul Sung in the amounts of $100.00 and $80.00. The defendant paid all of these bills in full without re-pricing. It must be noted that the total amounts paid, according to the amended complaint, are $4,563.25, which is less than $5,000.00, but the plaintiff asserts that her policy limit has

been exhausted.[1] As a result, the plaintiff currently owes money for unpaid medical bills, which she claims could have been paid by her first party benefits if the defendant would have adjusted the amounts owed instead of paying 100 percent of the amount due. The plaintiff contends that the defendant's failure to re-price the amounts of medical expenses was in violation of the Motor Vehicle Financial Responsibility Law and is in breach of the insurance contract.

The defendant contends that the amended complaint is legally insufficient as an insurance provider is not required to re-price the amount of medical expenses due in order to postpone the exhaustion of first party benefits nor is the insurance provider required to pay medical bills according to the fee schedule amount as provided in 75 Pa.C.S.A. § 1797.

"A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient." *Cooper v. Frankford Health Care System, Inc.*, 960 A.2d 134, 143 (Pa. Super. 2008) (citing *Cardenas v. Schober*, 783 A.2d 317, 321 (Pa. Super. 2001)). A demurrer must be resolved based solely on the pleadings, no testimony or evidence outside of the complaint may be considered to dispose of the legal issue presented. *Id.* "All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true." *Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 805 (Pa. Super. 2007) (citing *Cardenas, supra.*). A demurrer will only be sustained in cases where the complaint fails to set forth a valid cause of action. *Lerner v. Lerner*, 954 A.2d 1229, 1235 (Pa. Super. 2008) (citing *McArdle*

---

1. At the current time, the defendant does not appear to be contesting the fact that the plaintiff's first party benefits have been exhausted.

*v. Tronetti*, 426 Pa. Super. 607, 627 A.2d 1219, 1221 (1993)). If a doubt exists regarding whether a demurrer should be sustained, the doubt must be resolved in favor of overruling the demurrer. *R.W. v. Manzek*, 585 Pa. 335, 351, 888 A.2d 740, 749 (2005) (citations omitted). Fact-based defenses are irrelevant when ruling on a preliminary objection in the nature of a demurrer. *Werner v. Plater-Zyberk*, 799 A.2d 776, 783 (Pa. Super. 2002) (citing *Orner v. Mallick*, 515 Pa. 132, 135, 527 A.2d 521, 523 (1987)). "A 'speaking demurrer' is defined as 'one which, in order to sustain itself, requires the aid of a fact not appearing on the face of the pleading objected, or in other words, which alleges or assumes the existence of a fact not already pleaded, and which constitutes the ground of objection and is condemned both by the common law and the code system of the pleading.'" *Regal Indus. Corp. v. Crum and Forster, Inc.*, 890 A.2d 395, 398 (Pa. Super. 2005) (quoting Black's Law Dictionary 299 (6th ed. 1991)). The court is not permitted to consider a speaking demurrer in rendering its decision on preliminary objections. *Id.*

The plaintiff avers in her amended complaint that 75 Pa.C.S.A. § 1797(a) requires that an insurance provider re-price the amounts owed for medical bills to delay the exhaustion of the insured's first party benefits. That statute sets forth:

> (a) General rule. — A person or institution providing treatment, accommodations, products or services to an injured person for an injury covered by liability or uninsured and underinsured benefits or first party medical benefits, including extraordinary medical benefits, for a motor vehicle described in Subchapter B (relating to motor vehicle liability insurance first party benefits) shall not require, request or accept payment for the treatment, accommodations, products or services

in excess of 110% of the prevailing charge at the 75th percentile; 110% of the applicable fee schedule, the recommended fee or the inflation index charge; or 110% of the diagnostic-related groups (DRG) payment; whichever pertains to the specialty service involved, determined to be applicable in this Commonwealth under the Medicare program for comparable services at the time the services were rendered, or the provider's usual and customary charge, whichever is less. The General Assembly finds that the reimbursement allowances applicable in the Commonwealth under the Medicare program are an appropriate basis to calculate payment for treatments, accommodations, products or services for injuries covered by liability or uninsured and underinsured benefits or first party medical benefits insurance. Future changes or additions to Medicare allowances are applicable under this section. If the commissioner determines that an allowance under the Medicare program is not reasonable, he may adopt a different allowance by regulation, which allowance shall be applied against the percentage limitation in this subsection. If a prevailing charge, fee schedule, recommended fee, inflation index charge or DRG payment has not been calculated under the Medicare program for a particular treatment, accommodation, product or service, the amount of the payment may not exceed 80% of the provider's usual and customary charge. If acute care is provided in an acute care facility to a patient with an immediately life-threatening or urgent injury by a Level I or Level II trauma center accredited by the Pennsylvania Trauma Systems Foundation under the act of July 3, 1985 (P.L. 164, No. 45), known as the Emergency Medical Services Act, or to a major burn injury patient by a burn facility which meets all the service standards of the American Burn

Association, the amount of payment may not exceed the usual and customary charge. Providers subject to this section may not bill the insured directly but must bill the insurer for *a determination of the amount payable.* The provider shall not bill or otherwise attempt to collect from the insured the difference between the provider's full charge and the amount paid by the insurer. (emphasis added).

The intent of the General Assembly in enacting 75 Pa.C.S.A. § 1797(a) was to reduce the cost of purchasing motor vehicle insurance by decreasing insurance premiums by utilizing medical cost containment provisions. *Pittsburgh Neurosurgery Associates. Inc. v. Danner*, 733 A.2d 1279, 1282 (Pa. Super. 1999) (citing *Motorists Ins. Companies v. Emiq*, 444 Pa. Super. 524, 664 A.2d 559, 566 (1995)). That statute applies to treatment for injuries covered by liability benefits. *Id.*, 733 A.2d at 1283. "Section 1797(a) refers to liability, uninsured, underinsured and first party medical benefits, all of which are types of automobile insurance." *Id.* The *Pittsburgh Neurosurgery Associates* Court determined that the cost containment provisions in 75 Pa.C.S.A. § 1797(a) apply to medical bills remaining after an injured party's first party benefits have been exhausted and the injured party is seeking to recover from a third party's liability insurance. *Id.*, 733 A.2d at 1284. It must be noted that the cost containment provisions were still applicable during the period in which the injured party was awaiting a verdict or a settlement from the third party. *id.* The court reasoned that this would lessen the costs of insurance premiums as any jury verdict would be molded by the trial court to reflect the cost containment making the judgment replicate the actual cost of the injured party's medical bills, if the tortfeasor is found liable. *Id.* 733 A.2d at 1285. "Thus, by limiting the amount of damages an

injured party can receive after a jury verdict in his or her favor, the verdict will be lower and insurance costs will be reduced, in accordance with our legislature's objective in drafting § 1797." *Id.* The court again reiterated, "In enacting § 1797 our legislature sought to reduce insurance premiums by capping medical costs." *Id.*

In *Houston v. Southeastern Pennsylvania Transportation Authority*, 19 A.3d 6 (Pa. Cmwlth. 2011), the court held that an insurer is required to comply with the cost containment provisions of 75 Pa.C.S.A. § 1797 when calculating payment of personal injury protection benefits on behalf of eligible claimants. In that case, the appellant is a regional transportation authority which qualifies as a self-insurer. The appellant was required to provide personal injury protection benefits (hereinafter "PIP benefits") in the amount of $5,000 to eligible claimants who are injured as a result of motor vehicle accidents involving the appellant. The appellees were injured when they were riding on a bus operated by the appellant which collided with another vehicle. As a result of the accident, the appellees received medical treatment and they both lacked their own insurance, which prompted the medical providers to send the medical bills directly to the appellant. One appellee's medical bills totaled $6,864 and the other appellee's medical bills totaled $5,800. The appellant paid $5,000 for each of the appellees without adjusting the medical bills. The appellees filed a class action suit claiming that the appellant was required to make PIP benefit payments in accordance with 75 Pa.C.S.A. § 1797(a), which is a cost containment provision requiring insurers to adjust medical providers' bills and pay medical expenses at no more than 110 percent of the allowances applicable under the Medicare program. The appellees argued if the appellant had paid their medical bills as

prescribed in Section 1797(a) it would have paid a higher percentage of their total medical bills, which would have lessened their out-of-pocket expenses. The appellees filed various motions, including a motion for partial summary judgment on the issue of liability. The appellant filed a cross-motion for summary judgment claiming that, as a self-insurer, it was not subject to Section 1797(a). The trial court granted the appellees' motion for partial summary judgment concerning liability and declared that the appellant was required to render payment for medical bills in accordance with Section 1797(a). The trial court also denied the appellant's cross-motion for summary judgment. The appellant then filed its appeal with the Commonwealth Court of Pennsylvania raising several alleged errors of the trial court, which included that the trial court erred in determining the appellees were personally aggrieved by the appellant's overpayment to medical providers and they had standing to maintain an action. The appellant also asserted that the trial court erred in determining that the appellant was required to calculate the payment of PIP benefits in accordance with Section 1797(a).

Initially, the *Houston* Court addressed the appellant's argument that the appellees lacked standing as they settled their personal injury claims against the appellant for $12,500 and $10,000 respectively. The court considered the amount of unpaid medical bills and any possible financial windfall that may occur by allowing the appellees to recover for the appellant's failure to pay the PIP benefits in accordance with Section 1797(a) as they have already been reimbursed for those expenses. The court noted the settlement release contained the provision that the appellant was released from liability for everything except the failure to pay proper PIP benefits, which indicates

that any damages concerning the proper payment of PIP benefits were not included in the settlement. *Id.*, 19 A.3d at 11. The appellant also asserted that the appellees lacked standing as they failed to demonstrate that they were personally harmed or adversely affected by the manner in which the appellant paid PIP benefits. The *Houston* Court ruled that the appellees were personally aggrieved by the appellant's actions as it paid the unadjusted medical benefits and capped the appellees' medical benefits at $5,000, which caused the appellees to incur out-of-pocket medical expenses that would have been paid directly by the appellant if it followed the cost containment provisions in Section 1797(a). *Id.*, 19 A.3d at 11-12. Thus, the court determined that the appellees had standing to maintain that cause of action. *Id.*, 19 A.3d at 12.

In *Houston*, the appellant also contended that the trial court erred in declaring that it must comply with Section 1797(a) when calculating PIP benefits to be paid on behalf of eligible claimants. First, the court noted that the Motor Vehicle Financial Responsibility Law is to be liberally construed to provide the greatest possible coverage to injured claimants and close cases should be resolved in favor of coverage for the insured. *Id.*, 19 A.3d at 14 (citing *Sturkie v. Erie Insurance Group*, 407 Pa. Super. 117, 595 A.2d 152 (1991); *Motley v. State Farm*, 502 Pa. 335, 466 A.2d 609 (1983); 1 Pa.C.S.A. § 1928(c)). The appellant's interpretation of the statute was inapposite to the intent of the general assembly, which stated, "the general assembly finds that the reimbursement allowances applicable in the Commonwealth under the Medicare program are appropriate basis to calculate payment for treatments, accommodations, products or services for injuries covered by liability or uninsured and underinsured benefits or first party medical benefits insurance." *Id.*, 19 A.3d at 14

(quoting 75 Pa.C.S.A. § 1797(a)). Utilizing that rationale, the *Houston* Court determined that that appellant was required to render PIP benefits in accordance with Section 1797(a). *Id.*

In the case *sub judice*, the plaintiff, who maintained an automobile insurance policy with the defendant, was injured in a motor vehicle collision on October 16, 2008. The insurance policy included coverage for first party medical benefits with a limit of $5,000. She received various medical treatments from several medical service providers, which, according to the amended complaint, exceeded the amount of the policy limit. The defendant paid 100 percent of the medical bills until the policy limit was reached, but it failed to adjust the amount that it paid in accordance with 75 Pa.C.S.A. § 1797(a). As a result, the policy was exhausted, which made it necessary for the plaintiff to pay the remaining medical bills out-of-pocket.

This situation is analogous to the *Houston* case, in which the appellant paid 100 percent of the appellees' medical bills up to the $5,000 PIP benefit policy limit without adjusting the amount due in accordance with Section 1797(a). The *Houston* Court maintained that the trial court correctly ruled that cost containment provisions of Section 1797(a) mandated that insurers adjust the amount due to medical providers when paying benefits on behalf of an insured to limit the amount of out-of-pocket expenses to be paid by the appellees. Similarly, the defendant in the current matter paid the plaintiff's medical bills up to the first party benefits limit; however, it failed to adjust the medical bills in accordance with the cost containment provisions of Section 1797(a). This caused there to be excess medical bills to be paid by the plaintiff, which increased her out-of-pocket expenses. In accordance with the decision in *Houston*, the plaintiff has filed a legally

sufficient claim based upon the defendant's failure to adjust the amount paid for the plaintiff's medical bills, which increased her out-of-pocket expenses. Furthermore, Section 1797(a) mandates, "Providers subject to this section may not bill the insured directly but must bill the insurer for *a determination of the amount payable*." (emphasis added). That portion of the statute indicates that an insurer is required to adjust the amount due for medical bills it pays on behalf of an insured. Therefore, the defendant's preliminary objections are overruled as it had a duty to pay the plaintiff's medical bills at a reduced rate in accordance with Section 1797(a).

Additionally, the court feels compelled to address several of the phrases and characterizations employed by plaintiff's counsel Daniel I. Herman, Esquire, in the pleadings and his brief contained within the current record. In the amended complaint, plaintiff's counsel referred to opposing counsel stating, "For some reason, either due to stupidity, sloth, or mendacity, counsel for the defendant and/or the defendant fails to accept the current state of the law and the established practice..." Plaintiff's counsel further asserts, "As the defendant, due to stupidity, sloth, mendacity, ignorance or disregard for Act 6...did not reprice any of these amounts, even though they are required to under the Motor Vehicle Financial Responsibility Law, the plaintiff's first party benefits were quickly exhausted." This language continues in the plaintiff's brief in opposition to defendant's preliminary objections which in the first sentence states, "it is unusual for a defendant to be so completely, pillory, and incredibly wrong that in the case at bar the defendant, through its preliminary objections, represents either a lack of understanding of the Motor Vehicle Responsibility Law...or is in the alternative being completely disingenuous with the court." Again,

plaintiff refers to the defendant or defense counsel as being disingenuous by writing, "the defendant yet again filed what the plaintiff feels are extremely disingenuous and frivolous preliminary objections." Plaintiff's counsel also explained, "The defendant's preliminary objections are frivolous and flummery..." It is important to emphasize that there was a legitimate basis for filing preliminary objections as neither party was able to provide the court with case law concerning the issue presented, which indicates that the defendant's argument was not against the weight of the authority. Hence, the defendant presented a question of law that needed to be decided by the court and defense counsel was merely asserting an argument on behalf of his client.

These harsh and unnecessary statements are in violation of sections 1 through 3, 5 and 6 of the Code of Civility. Plaintiff's counsel failed to treat the defendant and defendant's counsel in a civil, professional and courteous manner. In addition, those averments were disrespectful and diminished the dignity and decorum of the courtroom. plaintiff's counsel repeatedly and continuously utilized disparaging remarks and made personal attacks upon opposing counsel and the defendant without any apparent provocation. It is incumbent upon plaintiff's counsel to refrain from that type of behavior and to advocate for his client in an appropriate and professional manner. This court expresses its disappointment with plaintiff's counsel for this tactic. The court is well acquainted with plaintiff's counsel, including being on opposite sides in criminal homicide trials. The use of such language demeans plaintiff's counsel's fine legal ability and advocacy skills. The court expects that counsel will abstain from such tactics in the future.

For the reasons set forth in this opinion, the defendant's

preliminary objections are overruled.

## ORDER OF COURT

Now this 12th day of June, 2014, this case being before the court on April 28, 2014, for oral argument on the preliminary objections filed by the defendant, with both parties appearing through counsel, the plaintiff Valerie Pavelko, represented through counsel, Daniel I. Herman, Esquire and the defendant Unitrin Direct Auto Insurance a/k/a Unitrin Direct Property and Casualty Company, represented through counsel, Joseph A. Hudock, Jr., Esquire and after consideration of the arguments and briefs presented and submitted by counsel and a complete and thorough review of the applicable record, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

1. In accordance with the attached opinion, the preliminary objections filed by the defendant are overruled.

2. The defendant shall file a written answer within twenty (20) days after notice of this order of court.

3. The prothonotary is directed to serve a copy of this order of court and opinion upon counsel of record, Daniel I. Herman, Esquire and Joseph A. Hudock, Jr., Esquire.