J. A32037/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MANUEL D. BAHOQUE-DELEON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY KRAWCZUK AND | : | |
| GARDA CL ATLANTIC, INC., | : | |
| | : | |
| Appellants | : | No. 782 EDA 2014 |

Appeal from the Judgment Entered April 1, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division No(s).: April Term 2011 No. 00622

BEFORE: PANELLA, OLSON, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                  **FILED APRIL 17, 2015**

Appellants, Timothy Kraczuk and Garda CL Atlantic, Inc., appeal from the judgment entered in the Philadelphia County Court of Common Pleas in favor of Appellee, Manuel D. Bahoque-Deleon.  Appellants contend the trial court erred by, *inter alia*, not reducing the amount of Appellee's hospital bill, permitting and precluding various testimony, holding that a fact witness was unavailable to testify at trial, and failing to charge the jury on 75 Pa.C.S. § 3361, which addresses driving a vehicle at a safe speed.  We hold Appellants are not entitled to relief.

---

[*] Former Justice specially assigned to the Superior Court.

We adopt the facts and procedural history set forth in the trial court's opinion. Trial Ct. Op., 6/6/14, at 1-6. We add that the jury held Appellee was 20% negligent. Verdict Sheet, 1/30/14. Appellants timely appealed[1] and timely filed a court-ordered Pa.R.A.P. 1925(b) statement raising sixteen issues.[2]

---

[1] Appellants prematurely appealed from the order denying their post-trial motion; the court's subsequent entry of judgment perfected Appellants' appeal. **See generally Johnston the Florist, Inc. v. TEDCO Const. Corp.**, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*).

[2] We endorse the following:

> With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

**Andaloro v. Armstrong World Indus., Inc.**, 799 A.2d 71, 83-84 (Pa. Super. 2002) (quoting Ruggero J. Aldisert, The Appellate Bar: Professional Competence and Professional Responsibility—A View from the Jaundiced Eye of One Appellate Judge, 11 Cap. U. L. Rev. 445, 458 (1982)); **accord Commonwealth v. Ellis**, 626 A.2d 1137, 1140 (Pa. 1993) ("[T]he number of claims raised in an appeal is usually in inverse proportion to their merit and that a large number of claims raises the presumption that all are invalid.").

Appellants raise the following six issues:[3]

> Whether the trial court abused its discretion and/or committed an error of law in failing to reduce the amount of . . . Appellee's hospital bill as required by 75 Pa.C.S. § 1797(a) prior to instructing the jury on damages, entitling Appellants to a new trial.

> Whether the trial court abused its discretion and/or committed an error of law by allowing Appellee's medical expert to offer an opinion on the reasonableness of Appellee's medical bills when such information was not contained within the expert's reports, was not disclosed in Appellee's discovery answers, and was otherwise outside the expert's area of expertise, entitling Appellants to a new trial?

> Whether the trial court abused its discretion and/or committed an error of law by precluding Appellants' medical expert from testifying in rebuttal to the trial testimony of Appellee's medical expert and precluding opinions which were otherwise admissible, entitling Appellants to a new trial?

> Whether the trial court abused its discretion and/or committed an error of law by precluding an eyewitness to the accident from providing permissible testimony regarding personal observations made by him at the time of the collision, entitling Appellants to a new trial?

> Whether the trial court abused its discretion and/or committed an error of law for deeming a fact witness

---

[3] Appellants' brief exceeds the 14,000 word limit set forth in Pa.R.A.P. 2135. We decline to find waiver, however. ***See generally Commonwealth v. Briggs***, 12 A.3d 291, 343 (Pa. 2011) ("The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised.").

"unavailable" for trial and permitting . . . Appellee to use the witness's deposition testimony where . . . Appellee did not even attempt to procure the witness's attendance at trial, and in denying Appellants' Motion in Limine to preclude the testimony of the witness without even considering the grounds set forth in the motion, entitling Appellants to a new trial?

Whether the trial court abused its discretion and/or committed an error of law by failing to charge the jury with respect to 75 Pa.C.S. § 3361 when evidence was presented at trial from which the jury could have inferred that Appellee was comparatively negligent per his violation of this statute, entitling Appellants to a new trial?

Appellants' Brief at 5-6.

Appellants, in support of their first issue, argue that 75 Pa.C.S. § 1797(a) of the Motor Vehicle Financial Responsibility Law ("MVFRL") applies. They reason that Appellee did not suffer any life-threatening or urgent injuries. Appellants refer this Court to medical records purportedly establishing the absence of "acute injury" and testimony that Appellee "only" suffered "(1) a cervical sprain/strain and (2) a bone bruise, aggravation of arthritic changes, and joint fluid in the left knee." *Id.* at 9. Accordingly, Appellants maintain that Appellee's medical bill "was subject to reduction" under the MVFRL. *Id.* at 10. We hold Appellants are not entitled to relief.

With respect to an order resolving a motion for a new trial, the standard of review is abuse of discretion. *Harman v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000). The analysis has two stages.

First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial

court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

*Id.* (citations omitted). If the alleged mistake involved a discretionary matter, then our standard of review is abuse of discretion; if the alleged mistake involved an error of law, then our standard of review is *de novo*. *Id.* at 1123 (citations omitted).

Our standard of review for statutory interpretation is *de novo*.

The object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly. When the words of a statute are clear and free from all ambiguity, their plain language is generally the best indication of legislative intent. A reviewing court should resort to other considerations to determine legislative intent only when the words of the statute are not explicit. In ascertaining legislative intent, this Court is guided by, among other things, the primary purpose of the statute, and the consequences of a particular interpretation.

Moreover, it is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute.

Absent a definition, statutes are presumed to employ words in their popular and plain everyday sense, and popular meanings of such words must prevail.

***Prieto Corp. v. Gambone Const. Co.***, 100 A.3d 602, 606-07 (Pa. Super. 2014) (citations omitted).

Section 1797(a) of the MVFRL states as follows, in relevant part:

> **(a) General rule.—** . . . If acute care is provided in an acute care facility to a patient with an immediately life-threatening or urgent injury by a Level I or Level II trauma center accredited by the Pennsylvania Trauma Systems Foundation under the act of July 3, 1985 (P.L. 164, No. 45), known as the Emergency Medical Services Act, or to a major burn injury patient by a burn facility which meets all the service standards of the American Burn Association, the amount of payment may not exceed the usual and customary charge.  Providers subject to this section may not bill the insured directly but must bill the insurer for a determination of the amount payable.  The provider shall not bill or otherwise attempt to collect from the insured the difference between the provider's full charge and the amount paid by the insurer.

75 Pa.C.S. § 1797(a) (footnote omitted).  "[T]he MVFRL is to be construed liberally to afford the greatest possible coverage to injured claimants." ***Sturkie v. Erie Ins. Group***, 595 A.2d 152, 157 (Pa. Super. 1991).

"The Insurance Commissioner's regulations, as set forth at 31 Pa. Code §§ 69.1–69.55 implement and interpret § 1797 of the MVFRL." ***Pittsburgh Neurosurgery Associates, Inc. v. Danner***, 733 A.2d 1279, 1283 (Pa. Super. 1999) (citation omitted).  Section 69.3 of the Pennsylvania Code defines "life-threatening injury" and "urgent injury" as follows:

> *Life-threatening injury*—The term shall be as defined by the American College of Surgeons' triage guidelines regarding the use of trauma centers for the region where the services are provided.

> *Urgent injury*—The term shall be as defined by the American College of Surgeons' triage guidelines regarding use of trauma centers for the region where the services are provided.

31 Pa. Code. § 69.3. Section 69.12 of the Pennsylvania Code expands upon Section 1797:

> (a) Acute care treatment and services for life-threatening or urgent injuries, and services for burn injury patients rendered by providers during transport to and while at a trauma center or a burn facility, shall be paid at the usual and customary charge when the insured's condition meets the definition of urgent or life-threatening injury, based upon information available at the time of the insured's assessment. When the initial assessment at the trauma center determines that the insured's injuries are not urgent or life-threatening, the exemption shall apply only to the initial assessment and the transportation to the facility. A decision by ambulance personnel that an injury is urgent or life[-]threatening shall be presumptive of the reasonableness and necessity of the transport to a trauma center or burn facility unless there is clear evidence of a violation of the American College of Surgeons' Triage Guidelines.

31 Pa. Code. § 69.12.

As a prefatory note, we observe that Appellants' argument collaterally attacks the necessity of Appellee's medical treatment. **See** Appellants' Brief at 9-10. This Court is not in a position to address, as an initial finder of fact, whether Appellee actually suffered a life-threatening or urgent injury. **See generally Morin v. Brassington**, 871 A.2d 844, 852 (Pa. Super. 2005). Instantly, as the trial court observed, Appellee's medical expert testified that due to his "significant trauma, he was admitted to what they call the trauma unit, which is a very expensive operation at a University Hospital." Trial Ct.

Op. (quoting N.T., 6/21/13, at 33). Accordingly, because the fact-finder found in Appellee's favor, we discern no error in the trial court's application of the statute.[4] **See Harman**, 756 A.2d at 1123.

Appellants, for their second issue, argue the trial court erred by permitting Dr. Abraham to testify outside the scope of his expert report. Specifically, they assert Dr. Abraham should not have been able to testify "that the charges set forth in the hospital bill were necess[a]ry and reasonable." Appellants' Brief at 13. Appellants reason that Dr. Abraham was not qualified to opine on the charges and such testimony was outside the fair scope of his report. Appellants, we hold, are due no relief.

By way of background, Appellants had objected to a line of questioning regarding the amount of the medical bills from the Hospital of the University of Pennsylvania. N.T. Trial Dep. of Dr. Abraham, 6/21/13, at 33-36. Appellants' counsel objected as follows:

> [Appellants' counsel]: I don't believe [Dr. Abraham] is capable of testifying to the reasonableness of the bills for an entity that's not his. Further, these bills have not been reduced by Act 6,[5] nor have they been reduced per insurance . . . . [T]herefore, I don't think his testimony with respect to the amount of these bills or the reasonableness is appropriate for this witness.

---

[4] Regardless, even if we could address, in the first instance, whether Appellee's medical treatment was justified, we are bound to construe the MVFRL in his favor. **See** 31 Pa. Code. § 69.12; **Sturkie**, 595 A.2d at 157.

[5] *I.e.*, the MVFRL.

\*    \*    \*

> [Appellee's counsel]. Doctor, do you find that those bills from the University of Pennsylvania emergency department were fair and reasonable?
>
> [Dr. Abraham]. Yes.

***Id.*** at 34-36.

Before presenting the video of Dr. Abraham's trial deposition to the jury, the parties raised their various objections with the court for its rulings. The trial court overruled the above objection, and both counsel responded for the record. N.T., 1/24/14, at 49-52. The substance of the responses was whether Act 6 operated to reduce the monetary values set forth in Appellee's medical bills; no party challenged whether Dr. Abraham could opine on whether the bills were fair and reasonable. ***See id.*** In its Rule 1925(a) opinion, the trial court held that Dr. Abraham was qualified to opine on the reasonableness of Appellee's medical bills. Trial Ct. Op. at 14-15.

"It is axiomatic that questions concerning the admission or exclusion of evidence are within the sound discretion of the lower court and will be reversed on appeal only where a clear abuse of discretion exists." ***Bucchianeri v. Equitable Gas Co.***, 491 A.2d 835, 838 (Pa. Super. 1985).[6]

> Before a court will order a new trial, it must conclude that the errors at trial led to an incorrect result. Unless there is

---

[6] We may rely on cases predating the adoption of the Pennsylvania Rules of Evidence to the extent those cases do not contradict the rules. ***See Commonwealth v. Aikens***, 990 A.2d 1181, 1185 n.2 (Pa. Super. 2010).

a substantial reason therefor, a new trial should not be granted in a negligence case. In an appeal from a jury trial, where the moving party alleges reversible error he must show not only the existence of the error, but also that the jury was misled by this error to his detriment. It is only when improperly admitted evidence may have affected a verdict that a new trial will be the correct remedy.

*Warren v. Mosites Const. Co.*, 385 A.2d 397, 401 (Pa. Super. 1978) (citations omitted). Further, "a physician has been held to be qualified generally to testify on the reasonableness of medical charges for services rendered by other doctors and hospitals." *Ratay v. Liu*, 260 A.2d 484, 486 (Pa. Super. 1969) (citation omitted). We may also affirm on any basis. *In re Strahsmeier*, 54 A.3d 359, 364 n.17 (Pa. Super. 2012).

Instantly, Appellants waived their objection that Dr. Abraham was not qualified to opine on the reasonableness of the medical bills. As noted above, the parties' objections focused on the applicability of Act 6. *See* N.T., 1/24/14, at 49-52; *see also* Pa.R.A.P. 302. Regardless, Appellants cite no case for the proposition that a physician must be qualified as an expert in emergency medicine in order to opine on the reasonableness of an emergency room bill. *Cf. Ratay*, 260 A.2d at 486. Accordingly, having discerned no abuse of discretion, *see Bucchianeri*, 491 A.2d at 838, we affirm Appellants' second issue, albeit on other grounds. *See In re Strahsmeier*, 54 A.3d at 364 n.17.

For their third issue, Appellants argue that the trial court erred by precluding Dr. Anthony Salem from testifying on five discrete areas: (1)

whether Appellee suffered a concussion; (2) what he considered important in his review of Appellee's medical records; (3) whether Appellee was disabled; (4) whether Dr. Abraham's treatment was reasonable and necessary; and (5) whether the Hospital of the University of Pennsylvania bill was reasonable. Appellant's Brief at 20. We hold Appellants waived this issue on appeal for failure to explain how or why the trial court abused its discretion. **See Connor v. Crozer Keystone Health Sys.**, 832 A.2d 1112, 1119 (Pa. Super. 2003) (holding appellant's failure to develop legal claim meaningfully results in waiver). Appellants simply failed to identify with sufficient particularity how they suffered prejudice by not having Dr. Salem testify on each of the five prohibited topics. Appellants' bald assertion of prejudice results in waiver of their claim. **See id.**

In support of their fourth issue, Appellants contend the trial court should have permitted a lay witness to testify whether he observed anyone was injured after the accident. Appellants referred this court generally to nineteen pages of testimony, within which at least thirteen objections were raised. **See** N.T., 1/29/14, at 29-48. Because Appellants have not specifically identified which objections are at issue, they have waived it on appeal.[7] **See** Pa.R.A.P. 2117(c)(4).

---

[7] Even if Appellants had preserved their claims, we would have found waiver based on an undeveloped claim of prejudice. **See Connor**, 832 A.2d at 1119.

J. A32037/14

Appellants' penultimate claim is that the trial court erred by holding Joes Gomez, a fact witness, was unavailable to testify and thus the court should not have permitted Appellee to use Mr. Gomez's deposition testimony at trial. They argue Appellee's counsel did not sufficiently establish his attempts to contact Mr. Gomez to testify. Appellee's counsel countered that Mr. Gomez, at the time of his deposition, resided in Jersey City, New Jersey, outside this Commonwealth. Appellee's counsel also represented to the court that he did not advise Mr. Gomez to leave the Commonwealth. N.T., 1/23/14, at 7-8. Appellants, we hold, are not entitled to relief.[8]

Pennsylvania Rule of Civil Procedure 4020 governs use of depositions at trial when the witness is unavailable:

> (a) At the trial, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had notice thereof if required, in accordance with any one of the following provisions:

> \* \* \*

---

[8] To the extent Appellants argued Mr. Gomez's deposition transcript was inadmissible hearsay, that argument was not raised in their post-trial motion, at trial, or in their motion in *limine*; thus, it is waived. **See Hall v. Owens Corning Fiberglass Corp.**, 779 A.2d 1167, 1169 (Pa. Super. 2001) ("Essentially, post-trial relief may not be granted unless the grounds for such relief are specified in the post-trial motion. Grounds not specified in the post-trial motion are deemed waived." (citation omitted)); **see generally** Pa.R.A.P. 302.

- 12 -

> (3) The deposition of a witness, whether or not a party, may be used by any party **for any purpose** if the court finds
>
> * * *
>
> (b) that the witness is at a greater distance than one hundred miles from the place of trial **or** is outside the Commonwealth, unless it appears that the absence of the witness was procured by the party offering the deposition . . . .

Pa.R.C.P. 4020 (emphases added).

> The proponent of a deposition at trial must demonstrate the unavailability of the witness **or** the exercise of due diligence on his part in attempting to locate the witness. The determination of the sufficiency of proof of unavailability is within the trial court's discretion, and, once the trial court is satisfied that the witness is unavailable, the witness's deposition may be admitted as substantive evidence.

*Hall*, 779 A.2d at 1171 (emphasis added and citations and quotation marks omitted).

Instantly, Mr. Gomez, at the time of his deposition, resided outside the Commonwealth. We discern no error in the trial court's determination that Appellee established the unavailability of Mr. Gomez. *See* Pa.R.C.P. 4020; *Hall*, 779 A.2d at 1171. Appellee's counsel, moreover, attempted to telephone Mr. Gomez several times but was unable to reach him. We need not, however, ascertain whether Appellee's counsel's efforts to contact Mr. Gomez constituted due diligence. *See Hall*, 779 A.2d at 1171.

Lastly, Appellants argue the court erred by not instructing the jury regarding 75 Pa.C.S. § 3361, which states:

- 13 -

> § 3361. Driving vehicle at safe speed
>
> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

75 Pa.C.S. § 3361. Appellants reference testimony that Appellee's vehicle was traveling at least as twice as fast as their vehicle prior to the collision. Appellant's Brief at 39. Appellants claim that if the jury was instructed on Section 3361, they could have established Appellee's comparative negligence for the accident because he failed to drive at a safe speed. We hold Appellants are due no relief.

As noted above, the standard of review for an order resolving a motion for a new trial is abuse of discretion. *Harman*, 756 A.2d at 1122. With respect to an allegation of trial court error regarding a jury charge:

> [T]he standard of review for this issue is one of abuse of discretion. [O]ur courts have made clear that an appellant must make a timely and specific objection to a jury instruction to preserve for review a claim that the jury charge was legally or factually flawed.
>
> In reviewing a claim regarding error with respect to a specific jury charge, we must view the charge in its entirety, taking into consideration all the evidence of record to determine whether or not error was committed.

> If we find that error was committed, we must then determine whether that error was prejudicial to the complaining party. Error will be found where the jury was probably misled by what the trial judge charged or where there was an omission in the charge which amounts to fundamental error.
>
> * * *
>
> The court is vested with substantial discretion in fashioning the charge and may select its own language cognizant of the need to adequately apprise the jury of the law **as it applies to the evidence adduced at trial**. Unless the language the court chose incorrectly states the law or mischaracterizes the evidence in a way that prejudiced the jury's consideration and thereby undermined the accuracy of the verdict, we will not interfere with the court's exercise of discretion.

*Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 968 (Pa. Super. 2011) (citations omitted and emphasis added), *aff'd*, 106 A.3d 656 (Pa. 2014).

Instantly, Appellants timely preserved their objection. N.T., 1/29/14, at 88. Upon review of the record, the parties' briefs, and the decision of Judge Overton, we discern no basis for granting relief on this issue. *See* Trial Ct. Op. at 24-25 (discussing conflicting testimony about the parties' speed). Regardless, the jury found Appellee was 20% negligent. *See* Verdict Sheet. Thus, we cannot say that the court's omission of Section 3361 amounted to a fundamental error undermining the accuracy of the verdict. *See Braun*, 24 A.3d at 968; *Warren*, 385 A.2d at 401. Accordingly, we affirm.

Judgment affirmed.

J. A32037/14

Judge Panella joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2015